IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| PRINCETON WOODS, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09cv905 (JCC) |
| | ) | |
| PNC BANK, NATIONAL | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendant PNC Bank, National Association's Motion to Dismiss Plaintiff Princeton Woods, L.L.C.'s complaint ("Complaint") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the Court will grant in part and deny in part Defendant's Motion to Dismiss Plaintiff's Complaint.

### I. Background

This case arises out of an alleged failure of Defendant PNC Bank, National Association ("Defendant" or "PNC Bank") to extend the expiry dates for certain letters of credit for the account of Plaintiff Princeton Woods, L.L.C. ("Plaintiff" or "Princeton Woods") for the benefit of Prince William County. Plaintiff is a limited liability company in the real estate development business.  (Compl. ¶ 3.)  Defendant is a national

1

banking institution that previously issued letters of credit on account of Plaintiff relating to its real estate development project located in Prince William County, Virginia.  (Compl. ¶¶ 2,8.)

The Complaint as filed contains following six causes of action: (1) Breach of contract; (2) fraud; (3) fraudulent concealment; (4) conversion; (5) intentional interference with obligations of the Prince William County contracts; and (6) intentional interference with obligations of the Kettler Forlines Homes contract.  However, in its Memorandum opposing Defendant's Motion to Dismiss, Plaintiff indicated that it withdraws Count IV (Conversion) and Count VI (Intentional Interference with Obligations of Kettler Forlines Homes Contract).  (Pls.' Mem. 20.)  Accordingly, the Court will dismiss these counts with prejudice.  Plaintiff seeks compensatory damages in the amount of $1,000,000, additional compensatory damages "for embarrassment, humiliation, and emotional distress," punitive damages of $350,000, and attorney's fees, costs and any other relief the Court deems appropriate.  Plaintiff does not seek a jury trial.

The allegations in the Complaint are as follows: For more than a decade, Plaintiff has been in the business of developing residential lots in a number of sections of the residential real estate communities named "Princeton Woods" and "Spy Glass Hill at Princeton Woods" ("Spy Glass Hill") located in

Dumfries, Prince William County, Virginia.  (Compl. ¶ 3.)
Plaintiff alleges that Prince William County ("County") requires
the real estate developer to execute three agreements backed by
corporate surety bonds, cash escrows, or letters of credit from
approved institutions.  (Compl. ¶ 4.)  The three agreements are
as follows: (1) a "Performance Bond" designed to assure the
County that the developer will construct public facilities
according to the County standards; (2) a "Siltation/Erosion
Control Agreement" designed to assure the County that the
developer will take necessary measures to minimize the siltation
flowing from the site; and (3) a "Landscape Agreement" designed
to assure the County that the developer will meet the approved
subdivision plans for landscaping.  (Compl. ¶¶ 4-6.)  The
Performance Bond is not at issue in this litigation.  (Compl. ¶
4.)

Up until April 2009, PNC Bank or its predecessors banks
has issued and renewed letters of credit as a surety for both the
Siltation/Erosion Control Agreement and the Landscape Agreement
for all sections in the Princeton Woods and Spy Glass Hill
development on behalf of Plaintiff for the benefit of Prince
William County.  (Compl. ¶¶ 5-6, 8.)  Plaintiff contends that
development of these communities is often not completed within
the time frame mandated by the original letters of credit backing
the agreements between the developer and the County.  (Compl. ¶

7.)  Thus, if there is a delay in completion, but the development nonetheless is progressing in a reasonable manner, then Prince William County would ordinarily issue an extension to the relevant agreements.  (Compl. ¶ 7.)  Before extending these agreements, however, the County will require a surety to provide applicable letters of credit renewing its obligation for six months after the expiry date of the extended agreements.  (Compl. ¶ 7.)

The agreements at issue are the Siltation/Erosion Control Agreement and the Landscape Agreement for which Prince William County required letters of credit from Princeton Woods. The letters of credit were required to secure Plaintiff's obligations with regard to Sections 2 and 5 of the Spy Glass Hill development.  (Compl. ¶¶ 5-6, 8.)  On April 23, 2009, Prince William County sent four renewal letters to Princeton Woods notifying it that the County will approve an extension on the Siltation/Erosion Control and Landscape Agreements in Sections 2 and 5 of the Spy Glass Hill development until October 23, 2009 "when [Plaintiff provides] the extended [l]etters of [c]redit [effective until April 23, 2010]."  (Compl. Ex. A.)  The copies of these letters were sent to PNC Bank which previously provided the letters of credit for the Siltation/Erosion Control and Landscape Agreements.  (Compl. ¶ 9.)  After receiving these renewal letters from Prince William County, PNC Bank asked

4

Plaintiff to submit copies of the latest tax returns and
financial statements.  (Compl. ¶ 10.)   PNC Bank also sent
invoices for fees to be charged for issuance of the new letters
of credit in the amount of $1,460.00.  (Compl. ¶ 10; Ex. B.)   On
or about May 6, 2009, Bob Hughlett ("Hughlett"), a loan officer
at PNC Bank, informed Plaintiff that PNC Bank would not issue the
new letters of credit until the requested fees were paid.
(Compl. ¶ 10.)   Thus, on the same date, Plaintiff paid the
requested fees using a check.  (Compl. ¶ 10.)   PNC Bank accepted
and cashed the check.  (Compl. ¶ 10; Ex. C.)   Plaintiff assumed
PNC Bank had issued the requested letters of credit to Prince
William County and accordingly did not take any further action.
(Compl. ¶ 11.)   To Plaintiff's surprise, PNC Bank did not execute
the new letters of credit because its officers determined that
the bank would no longer issue unsecured letters of credit.
(Compl. ¶ 11.)   Instead, the officers of PNC Bank determined that
a new loan should be issued to Princeton Woods which would
require Princeton Woods to mortgage all remaining lots in Section
5 as security for the new letters of credit and that all proceeds
from the lot sales would be placed in escrow until PNC Bank had a
cash escrow in the amount of $250,692.00, the face amount of the
letters of credit.  (Compl. ¶ 11.)

        Plaintiff did not know that there existed any problem
with renewing the letters of credit until it received a telephone

call from Prince William County on June 23, 2009.  (Compl. ¶ 13.)
During this call, Donna Eaton Jones ("Jones") of Prince William
County notified Plaintiff that Princeton Wood's extension request
on the Siltation/Erosion Control and Landscape Agreements for
Sections 2 and 5 of the Spy Glass Hill development has been
denied because Plaintiff failed to submit renewed letters of
credit with an expiry date of April 23, 2010.  (Compl. ¶ 13.)
The County took a position that the Siltation/Erosion and
Landscape Agreements for Sections 2 and 5 of the Spy Glass Hill
development were no longer in effect and that Plaintiff defaulted
on its agreement with the County.  (Compl. ¶ 13.)  As a result of
the default, Jones informed Plaintiff that the County will not
issue any building, inspections, or occupancy permits for the
houses in the development.  (Compl. ¶ 13.)  Further, Jones
requested Plaintiff submit new letters of credit with a proper
expiry date of April 23, 2010 or establish cash escrows equal to
the face amount of the letters of credit at issue within 30 days.
(Compl. ¶ 13.)

        After receiving the call from Jones, Plaintiff's
managing member telephoned Hughlett immediately regarding the
status of the requested letters of credit.  (Compl. ¶ 14.)
Hughlett informed Plaintiff that the requested letters of credit
were not issued because PNC Bank wanted Plaintiff to obtain a new
loan mortgaging all remaining lots in Spy Glass Hill as security

for the letters of credit.  (Compl. ¶ 14.)  Hughlett added that PNC Bank would charge preposterous fees to Plaintiff to make a new loan.  (Compl. ¶ 14.)  Further, Hughlett acknowledged that PNC bank caused the problem and offered to call Prince William County to vindicate Princeton Woods.  (Compl. ¶ 14.)  Plaintiff, upon information and belief, alleges that Hughlett in fact called Cathy Ferguson, the director of bonding of Prince William County, to explain the circumstances but the phone call did not change the County's position regarding Princeton Wood's obligation. (Compl. ¶ 14.)

Plaintiff filed the Complaint against Defendant in the Circuit Court for Fairfax County, Virginia on July 8, 2009. Defendant removed the case to the United States District Court for the Eastern District of Virginia on August 13, 2009.  On August 20, 2009, Defendant moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) and Plaintiff opposed the motion on August 31, 2009.  Defendant's Motion to Dismiss is before the Court.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.  *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted).  In deciding a Rule 12(b)(6) motion to dismiss, a court must first be mindful of the liberal pleading standards under Rule 8, which require only

7

"a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.  Thus, a court must take "the material allegations of the complaint" as admitted and liberally construe the complaint in favor of plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citation omitted).

While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted). Indeed, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.* at 1965.  In its recent decision, *Iqbal v. Ashcroft*, 129 S.Ct 1937 (2009), the Supreme Court expanded upon *Twombly* by articulating the two-pronged analytical approach to be followed in any Rule 12(b)(6) test.  First, the court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth. *Id.* at 1951.  "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" do not suffice. *Id.* (citations omitted).  Second, assuming the veracity of "well-pleaded factual allegations," the Court must conduct a "context-specific" analysis drawing on "its judicial

8

experience and common sense" and determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.* at 1950.  The plausibility standard requires more than a showing of "a sheer possibility that a defendant has acted unlawfully".  *Id.* at 1949.  In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

### III.  Analysis

#### A.  Count I: Breach of Contract

Defendant PNC Bank argues that Count I of Plaintiff's Complaint should be dismissed on the basis that (1) Plaintiff failed to allege facts that support the existence of a contract between Plaintiff and Defendant and (2) Plaintiff's claim is barred by the Virginia Statute of Frauds Sections 11-2(4) and 11-2(9).

##### 1.  Formation of Contract

In Virginia, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619 (Va. 2004).  There must be "acceptance of an offer . . . as well as valuable consideration" for an enforceable contract to form.

9

*Montagna v. Holiday Inns, Inc.*, 221 Va. 336, 346 (Va. 1980) (citation omitted).

The parties dispute whether Plaintiff has adequately pled the formation of a contract between PNC Bank and Princeton Woods.  Plaintiff argues that it properly alleged the formation of a contract between PNC Bank and Princeton Woods. (Pl.'s Mem. in Opp. of Mot. to Dismiss ("Pl.'s Mem") 12-13.)  Paragraph 10 of the Complaint provides that "[o]n or about May 6, 2009 Plaintiff's officer at PNC [Bank], Bob Hughlett, advised Plaintiff[] that PNC would not issue the new letters of credit until the bank's fees were paid."  (Compl. ¶ 10.)  In its opposition, Plaintiff highlights the fact that Hughlett told Plaintiff that Princeton Woods needed to pay in advance for the new letters of credit, sent a list of what needed to be paid, and accepted the payment made by Princeton Woods.  (Pl.'s Mem 12-13.) Defendant argues that the fees paid by Plaintiff were the fees "that were past due and owing for then-existing letters of credit," hence do not tend to show PNC Bank's agreement to issue the new letters of credit.  (Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") 4, n.2.)  Construing the factual allegations in the Complaint in the light most favorable to the non-moving party, the Court finds that Plaintiff has adequately pled formation of an agreement between PNC Bank and Princeton Woods.  Taking Plaintiff's allegations as truth for the purposes

10

of this Motion, the Court finds that the facts set forth in the Complaint demonstrate plausibility that the parties formed an agreement regarding the renewal of the letters of credit.

### 2.  Statute of Frauds

Defendant argues that PNC Bank's obligation to Princeton Woods, at best, arose from an alleged oral agreement which clearly falls within the ambit of the Virginia Statute of Frauds ("Statute of Frauds") Sections 11-2(4) and 11-2(9). (Def.'s Mem. 4-6.)  Because Plaintiff failed to allege any writing evidencing Defendant's obligation to issue the new letters of credit to Prince William County on behalf of Plaintiff, Defendant requests the Court to dismiss Count I of the Complaint.  (Def.'s Mem. 3-6.)  In response, Plaintiff submits that the Statute of Frauds does not apply here because, among other things, the money has already transferred hands to PNC Bank, essentially relying on past partial performance to require full enforcement.  (Pl.'s Mem. 7-8.)  The Court will address each applicable section of the Statute of Frauds in turn.

The Statute of Frauds Section 11-2(4) provides  that no action shall be brought "to charge any person upon a promise to answer for the debt of another" unless a promise is in writing and signed by the party to be charged.  Whether a promise of a person to pay a debt on behalf of another is within the Statute of Frauds depends on the nature of the promise.  *Durrette v.*

*Hutson*, 1990 WL 751396, *1 (Va. Cir. Ct. 1990).  The Statute of Frauds applies if the promise is "collateral" rather than "original."  *Id.* at *1-2.  The promise is collateral, "if the original debtor remains liable and the undertaking of the third party . . . is merely to ensure or guarantee payment."  *Id.* at *1; *see also Lawson v. State Const. Co.*, 193 Va. 513 (Va. 1952). Further, the kind of benefit that makes the promise "original" rather than "collateral" is one, which the promisor receives or expects to receive at the time the promise is made "resulting in an original, independent undertaking by the promisor."  *Id.* at 521.  Based on this guidance, this Court's analysis focuses on whether Plaintiff has sufficiently alleged that PNC Bank's promise was "original" in nature which would take the promise out of the writing requirement.

Even though Plaintiff has characterized PNC Bank as a "surety" in its Complaint (Compl. ¶¶ 7, 9), the Court does not rely exclusively on the words or form of expression used to discern the nature of the promise.  *See id.* at 518 (internal citations omitted).  Rather, the Court considers "the situation of the parties and what they mutually understood from the language, whether they understood the transaction to be a direct or a collateral promise."  *Id.*  Based on the Court's review of the circumstances surrounding PNC Bank's promise to issue the new letters of credit as alleged in the Complaint, the Court finds

12

that Plaintiff sufficiently pled factual allegations to show that PNC Bank's promise could be construed direct, original and independent.  To be clear, the Court does not decide whether the oral promise at issue is original or collateral at this juncture. Rather, it only holds that Plaintiff has provided adequate facts in its Complaint to show plausibility that PNC Bank's alleged promise to issue the new letters of credit to Plaintiff is different from Plaintiff's promise to Prince William County to provide proper siltation/erosion controls and landscaping. (Compl. ¶¶ 4-6, 10.); *see Planters Bank and Trust Co. v. Loe,* 193 Va. 411, 416 (Va. 1952).  Plaintiff also properly alleged that PNC Bank accepted an independent consideration for its obligation to issue letters of credit on Plaintiff's behalf when it accepted and cashed the check sent by Plaintiff as fees to be charged for issuance of the letters of credit.  (Compl. ¶ 10.)  Thus, the Court believes that Plaintiff has alleged sufficient facts to place the oral agreement outside the confines of the Statute of Frauds and will not dismiss Count I of the Complaint at this time.

Defendant next argues that Section 11-2(9) of the Virginia Statute of Frauds bars Count I of the Complaint because no person can be charged upon an agreement or promise to lend money or extend credit in an aggregate amount of $25,000 or more unless the agreement is in writing and signed by the person

13

sought to be charged.  Va. Code Ann. § 11-2(9).  To support its
argument, Defendant points to the amount that was to be secured
by the new letters of credit, which far exceeded $25,000.
(Def.'s Mem. 4-5.)  Plaintiff does not dispute the applicability
of this section (Pl.'s Mem. 7), instead argues that the Statute
of Frauds should not apply under either a partial performance
exception or equitable estoppel doctrine (Pl.'s Mem. 7-12.)

       The Virginia Supreme Court held that where a
complaining party has partially performed, "a court of equity
will avoid the statute of frauds and enforce an oral agreement"
under certain conditions.  *See T-- v. T--*, 216 Va. 867, 872 (Va.
1976).  Such conditions are "(1) that the oral agreement is
certain and definite, and (2) that the part performance is so
extensive that refusal to honor the oral agreement "would operate
as fraud upon the party."  *See T.G. Slater & Son, Inc. v. Brennan
LLC*, 385 F.3d 836, 841 (4th Cir. 2004).  The partial performance
must be of unequivocal nature to evidence the existence of an
agreement and must be consistent with no theory other than the
existence of the alleged oral agreement.  *T--,216 Va.* at 872.
Further, a defending party may be estopped by his conduct from
using the statute of frauds defense under the doctrine of
equitable estoppel.  *Id.*  To establish equitable estoppel, a
complaining party has to show, absent a showing of fraud and
deception, the following four elements: a representation,

14

reliance, a change of position, and detriment. *Id.* (internal citation omitted).

The factual allegations set forth in the Complaint, taken as admitted for the purposes of Rule 12(b)(6) analysis, show that the elements of both partial performance and equitable estoppel have been properly alleged. First, the Complaint alleges that relying on the definite agreement it had with PNC Bank's loan officer Hughlett, Plaintiff has paid the required fees to obtain the new letters of credit from PNC Bank, thereby partially performing its obligation. (Compl. ¶ 10.) Plaintiff would not have paid the monies if it did not believe that PNC Bank was going to renew the letters of credit. The Complaint also alleges that PNC Bank failed to inform Plaintiff that it was not going to renew the letters of credit. (Compl. ¶ 12). The factual allegations also plausibly show all elements of equitable estoppel. The Complaint alleges that Plaintiff relied on Hughlett's representation that PNC Bank would issue the new letters of credit and paid the required fees to its detriment. (Compl. ¶¶ 10-12.) Thus, viewing these factual allegations in the light most favorable to Plaintiff, the Court finds that the Complaint states a claim for breach of contract even without the allegations evidencing a writing.

B.  Counts II, III, V

Defendant submits that Count II (Fraud), Count III

(Fraudulent Concealment), and Count V (Intentional Interference with Contractual Obligations) must be dismissed because these counts sound only in contract, not tort.   (Def.'s Mem. 9.)

The Supreme Court of Virginia acknowledged that "[a] tort action cannot be based solely on a negligent breach of contract.   *See Richmond Metro. Auth. v. McDevitt St. Bovis Inc.,* 256 Va. 553, 559 (Va. 1998).   To determine whether a cause of action sounds in tort or in contract, the Court must ascertain the source of the duty violated.   *Id.* at 558.   If the cause of complaint would not give rise to any cause of action absent a contract, then the action is founded upon contract, not tort. *Id.*   Additionally, Virginia courts "have acknowledged that a party can, in certain circumstances, show both a breach of contract and a tortious breach of duty."   *17th Street Assoc's, LLP v. Markel Int'l Ins. Co. Ltd.,* 373 F. Supp. 2d 584, 599 (E.D. Va. 2005) (citations omitted).   This recognition is limited, however, by the requirement that the tortiously breached duty "must be a common law duty, not one existing between the parties solely by virtue of the contract."   *Id.* (citations omitted); *cf. Filak*, 267 Va. at 618 (noting that "losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts.")

Defendant argues that Counts II, III, and V of the

16

Complaint are based solely on the allegation that Defendant has breached its contractual duty to issue new letters of credit to Prince William County on behalf of Plaintiff. (Def.'s Mem. 10 (citing Compl. ¶¶ 20, 26, 33 )). Because these claims at issue are sound in contract and there is no independent or common law duty alleged in the Complaint, Defendant avers that the Complaint fails to state a claim for Counts II, III, and V.

Plaintiff asserts that despite the holding in *Richmond Metro Authority*, Count II, a fraud claim, still may be brought if the promisor made promises without any intention to actually perform them.[1] (Pl.'s Mem. 14. citing *Lloyd v. Smith*, 150 Va. 132, 145-47 (Va. 1928)). Plaintiff relies on Paragraph 20 of the Complaint and submits, if taken as true, that Paragraph 20 establishes PNC Bank did not intend to issue the new letters of credit at the time it promised Plaintiff that it would issue the new letters of credit. (Pl.'s Mem. at 15.) Paragraph 20 states:

> [b]y accepting Plaintiff's check in payment of the bank's fees for issuance of the letters of credit, PNC Bank actually or impliedly represented that it had a present intent to honor its contractual obligation to issue the letters of credit to secure the Landscape and Siltation/Erosion control Agreements in Sections 2 and 5 of spy Glass Hill. In fact, PNC Bank did not intend at that time to perform its contractual obligation to issue the letters of credit. *Said representations were made intentionally and knowingly with intent to mislead*

---

[1] Plaintiff did not provide any exceptions that would apply to Counts III and V to counter Defendant's argument that they are tort actions sound in contract, thus cannot be brought.

17

*Plaintiff.*

(Compl. ¶ 20) (emphasis added).

The Court is not convinced that a mere allegation by Plaintiff that Defendant made fraudulent representations intentionally and knowingly is sufficient to clear the Rule 12(b)(6) bar in light of the *Iqbal* standard. Paragraph 20 is replete with "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" and contains nothing "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. Because the Court only sees legal conclusions unsupported by factual allegations regarding PNC Bank's intent when it accepted the check from Plaintiff, the Court finds that a fraud claim cannot be established. In light of Plaintiff's failure to allege sufficient facts that give rise to PNC's independent common law duty supporting the tort claims and Plaintiff's failure to allege sufficient facts evidencing PNC Bank's intention to interfere with the Prince William County contracts, Plaintiff's claims for Counts II, III and V will be dismissed.

C.  Damages

In Virginia, punitive damages are not available in the absence of an "independent willful tort." *Kamlar Corp. v. Haley*, 224 Va. 699, 707 (Va. 1983). Based on Plaintiff's failure to allege PNC's independent common law duty supporting the tort

18

claims as set forth above, the Court will dismiss Plaintiff's request for punitive damages.

### VI. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Defendant PNC Bank's Motion to Dismiss Plaintiff Princeton Woods' Complaint.

An appropriate Order will issue.


October 28, 2009                                    /s/
Alexandria, Virginia                   James C. Cacheris
                            UNITED STATES DISTRICT COURT JUDGE